WICKER *et al.* *vs.* SIESEL.

Where the municipal authorities of Montezuma, under the charter of that town, had exclusive control of the matter of licensing the sale of liquors, of fixing the rate of such license and the terms upon which it should be issued, etc., and where such authorities, by ordinance, fixed the amount of the license at $500 per annum, and prescribed that it should be paid before the license should be issued, but entered into an agreement privately with one Byrd that he need not pay the full amount of the license in advance, and at different times from December, 1885, to September, 1886, he made payments upon the license amounting in all to $340; and where, in July, 1886, Byrd made to Siesel a bill of sale to all his goods, including liquors, etc., Siesel had the right to recover in an action of trover against Wicker, the town marshal, who had levied upon the goods an execution issued in September, 1886, for the balance of the license fee, and had sold them in October, 1886, Siesel having made demand on Wicker for the goods while they were still in Wicker's hands.

(*a*) Whether the fee for retailing liquors was a tax or license, it was

required to be paid in advance, and when Siesel saw Byrd retailing liquors under the ordinance, he had a right to presume that the license fee had been paid. The town council would not have the right to violate their own ordinance, and then take advantage of their own wrong by subjecting the goods of an innocent purchaser to a debt which Byrd owed them. When they issued the license on credit, they occupied no better position than an ordinary creditor.

(b) It is even doubtful if their claim rose to the dignity of a debt, the remedy provided by the charter being that they might revoke or declare the license void when the terms of the ordinance were not complied with.

June 4, 1888.

Municipal corporations. Liquor. License. *Bona fides.* Debtor and creditor. Before Judge FORT. Macon superior court. May term, 1887.

Reported in the decision.

LYON & ESTES and JOHN W. HAYGOOD, for plaintiffs in error.

W. H. FISH, *contra.*

SIMMONS, Justice.

The charter of the town of Montezuma gives the mayor and council "the sole and exclusive right of granting license to sell liquors and to sell by retail liquors in the town of Montezuma, and of fixing the rate of such license and the terms upon which they shall be issued, of declaring said license void when said terms are not complied with." The mayor and aldermen, by an ordinance, fixed the amount of the license at $500 per annum, and prescribed that a fee of $500 should be paid in advance before the license issued. There was an agreement with Byrd by the mayor and council, that he need not pay the full amount of the license in advance. At different times, from December, 1885, to September, 1886, Byrd made payments upon the license, until he paid the sum of $340. In July,

1886, Byrd made and executed to Siesel a bill of sale to all his goods, including liquors, etc. In September, 1886, the clerk of the town council issued an execution against Byrd for the balance of the license fee, which execution was levied by Wicker, the town marshal, upon the goods, and in October, 1886, the goods were sold. While the goods were in the hands of the marshal, and before the sale, Siesel made a demand upon the marshal for the goods, claiming them as his own. The marshal refused to deliver them ; whereupon Siesel brought an action of trover. The case was submitted to the judge without the intervention of a jury, and he found in favor of Siesel. Wicker, the marshal, sued out his bill of exceptions and alleged error thereon.

Under the facts of this case, as disclosed by the record, we think the judgment of the court below was right. Whether the fee for retailing liquors in the town of Montezuma was a tax or a license, it is not necessary for us to decide. Whether it is the one or the other, the ordinance required it to be paid in advance. That was the law of the town, which every person therein was presumed to know. When Siesel saw Byrd retailing liquors, under this ordinance, he had a right to presume that Byrd's license fee had been paid; because the law required it to be paid before the license issued. Acting upon this knowledge, and without any notice, so far as the record discloses, that the fee had not been paid, he purchased these goods from Byrd. We think, therefore, that he was an innocent purchaser, and that the city marshal had no right to sell his goods for the balance of the license fee owed by Byrd. The town council seem to have violated their own law in allowing Byrd to retail liquors without having first paid the whole of the license fee ; and we do not think that they ought to be allowed to take advantage of their own wrong and subject the goods of an innocent purchaser to a debt which Byrd owed them ; because after they had violated their own ordinance and issued the license to

Byrd on a credit, it was nothing but a debt; and they occu-pied no better position than an ordinary creditor. It is doubtful even if it rises to the dignity of a debt. The remedy provided by the charter is, that the town authori-ties may revoke or declare the license void, when the terms of the ordinance are not complied with.

Judgment affirmed.